**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANNAH E. COLICH, | ) | CASE NO. 3:26-CV-00381-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Hannah E. Colich ("Colich" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On December 14, 2022, Colich filed an application for SSI, alleging a disability onset date of October 10, 2019. (ECF No. 7, PageID #: 44). The application was denied initially and upon reconsideration, and Colich requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On October 17, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 70-99). On November 7, 2024, the ALJ issued a written decision finding Colich was not disabled. (*Id.* at PageID #: 44-62). The ALJ noted that a prior March 24, 2021 decision found Claimant not disabled and there was not good cause or

evidence of fraud or similar fault to justify reopening the prior decision such that the earliest alleged date of onset was March 25, 2021. (*Id.* at PageID #: 44). The ALJ's decision became final on December 16, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 28-30).

On February 16, 2026, Colich filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 9). Colich asserts a single assignment of error: "The ALJ failed to properly consider the full effect of Ms. Colich's severe migraine headaches and how they impacted her ability to perform work-related activities." (ECF No. 8 at 2).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony regarding Colich's migraines from her hearing:

> October 17, 2024, testimony and the record reflect an unmarried, right hand dominant, high school educated, 5'5," 260-pound individual, who reported living with her mother, step-father and sister (Exhibit B-4E, page 6). The claimant reported holding a valid driver's license and driving once a month due to concern for inability to return home on her own, which she related to migraines, and she denied any work within the last five years.
>
> The claimant reported an inability to work due to unpredictable longstanding migraine headaches since 2016 to 2017 when still in high school and further noted that she had a lot of trouble in school with teachers, who were not happy with her resulting in a need to finish her last two years of high school online. As to other conditions, the claimant reported fibromyalgia that causes her body to become sore based on the weather, the temperature and on barometric pressure.
>
> As to migraine triggers, the claimant reported that sometimes smells and eating the wrong things can cause a migraine. She also reported that her migraines have remained about the same, as they are not worse and not better, but also that it is hard for her to tell, as she experiences constant migraines and in the past it was headaches all the time and migraines not as often. As to frequency of migraines, the claimant reported experiencing 17 to 20 migraines a month with a lot of days

> when migraine symptoms, but not always the migraine pain, will continue into the next day. It is also noted that the claimant's submitted migraine logs from August 27, 2023, to November 5, 2023, and from September 17, 2024, to October 7, 2024, essentially reflect her reports for daily migraines/headaches, which frequency she testified to reporting to her primary care physician (PCP) and neurologist (Exhibits B-16E; B-20E).
>
> As to treatment for longstanding migraines/headaches the claimant reported that she has tried numerous medications, but this condition is longstanding, such that it has been ongoing on since teenage years, and as noted, to predate the prior unfavorable March 2021 ALJ decision. In later testimony, the claimant also reported that she will lie in bed for a couple of hour to help migraine pain, and acknowledged that she elevates her feet by putting them on an ottoman. The claimant reported that she was referred to a headache reboot at the Cleveland Clinic, which she did not undergo reportedly as her mother hurt her shoulder at that time and could not drive her and due to financial difficulties in affording a place to stay during the follow-ups for the reboot, which situation has been the case for the last year due to not having finances. The claimant confirmed access to medical insurance. The claimant also confirmed use of a cane when outside the home, but not in the home and she confirmed that no medical source ever recommended or suggested that she use a cane, but she reported that her legs get weak and that it is hard for her to lift/bend her legs, which is why she started using the cane, and as migraines cause her to stumble. While such might be so, the records reflect the claimant's November 2021 self-report that she has always been clumsy, and there are reports of normal gait (Exhibit B-5F, page 90). As to what might cause leg weakness, the claimant reported that it is hard to tell, but she thinks it is due to fibromyalgia.

(ECF No. 7, PageID #: 54-55).

**B. Relevant Medical Evidence**

The ALJ also summarized Colich's health records and symptoms concerning her migraines:

> As to longstanding migraines with reported ongoing helpful use medication treatment, the records note the claimant seeking emergency room (E/R) treatment in August 2023 for a severe migraine, and as to this, prior MRI from May 2023 was within normal limits as also were other prior MRI and CTs of head. The August 2023 E/R treatment was conservative with use of medications and the claimant was discharged in stable condition (Exhibits B-4F, pages 38, 61, 87-88; B-13F, page 12). Records reflecting migraines also noted the claimant not improved with Botox as it caused weakness in the neck, but neurological exam at this time and essentially throughout the records were with minimal to normal findings including September 2023 and July 31, 2024, exams (i.e. other than difficulty walking on toes) along

> with recent approval for Galcanezumab, which improved her symptoms (Exhibits B-4F, pages 15, 20-23; B-6F, page 5; B-12F, page 5; B-17F, page 24; B-25F, pages 12, 20-21; B-26F, pages 5-6). Also as noted within testimony referral to the Cleveland Clinic for a Headache Reboot occurring within context for reports of continuous migraines 18 days per month did not occur despite access to medical insurance and due to logistics of travel/lodging and financial constraints. However, the overall records do note improvement in the frequency and severity of these reported headaches/ migraines along with medical recommendations for encouraged exercise, lifestyle changes and to start physical therapy in 2024 (Exhibits B-25F; B-27F). As to vision, August 2024 vision exam noted visual acuity (VA) corrected to 20/20 with prescription (Exhibit B-22F).

(ECF No. 7, PageID #: 56).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since December 14, 2022, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: migraines; myalgias/ fibromyalgia; mild degenerative changes of the cervical spine; a depressive disorder; a generalized anxiety disorder; a panic disorder; and a posttraumatic stress disorder (PTSD) (Exhibits B-1F to B-27F)(20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as reduced by standing and/or walking of four hours total in an eight hour workday, and as further reduced by the following. The claimant can frequently handle and finger bilaterally, can frequently balance as defined in the SCO of the DOT, can occasionally stoop, kneel, crouch, crawl and can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant needs to avoid concentrated exposure to extreme cold, extreme heat, weather as defined in the SCO of the DOT, wetness, and vibration, and also avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. The claimant is also limited to working in an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO). Mentally the claimant can understand, remember, and carry out simple tasks and can deal with occasional changes in a routine work setting, but she cannot perform work

requiring a specific production rate such as assembly line work or work that requires hourly quotas but can perform end of day quotas. The claimant can also have occasional interactions with supervisors and coworkers, but she cannot engage in tandem tasks, and no interaction with the public.

5. The claimant has no past relevant work (20 CFR 416.965).

…

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 14, 2022, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 7, PageID #: 45-46, 49, 53, 61-62).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Colich raises a single issue on appeal, arguing the ALJ "failed to properly consider the full effect of [her] severe migraine headaches and how they impacted her ability to perform work-related activities." (ECF No. 8 at 2). Colich argues the ALJ "grossly misrepresented the record

when it came to [her] severe migraine headaches and their impact on her ability to function." (*Id.* at 9). She argues that the ALJ improperly relied on *Drummond v. Commissioner of Social Security* and Acquiescence Ruling 98-4(6) and adopted an RFC from a previous unfavorable decision based on her conclusion that Colich's migraines had not worsened since the prior decision. (*Id.*). Plaintiff's position is that the ALJ should have instead relied on *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018) and Acquiescence Ruling 24-1(6) and considered the new application for an unadjudicated time period independently. (*Id.* at 9-10). Colich argues that if the ALJ properly considered the new time period, she would have found that Colich's migraines worsened and occurred at such a frequency and duration that she would not be able to sustain full-time employment. (*Id.* at 11-12).

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's analysis of Plaintiff's migraines headaches." (ECF No. 9 at 3). Concerning Acquiescence Ruling 24-1(6), the Commissioner asserts that Ruling did not go into effect until almost a month after the ALJ's decision. (*Id.*). While the ALJ did not cite *Earley*, the Commissioner argues the ALJ complied with *Earley* because she took a "fresh look" and considered the new evidence provided by Plaintiff in her second application. (*Id.* at 3-4). The Commissioner argues the ALJ relied on Claimant's own testimony in concluding Claimant's migraines had not worsened. (*Id.* at 4-5). Finally, the Commissioner argues that the ALJ relied on the State agency opinions in formulating the RFC such that the ALJ's decision is supported by substantial evidence. (*Id.* at 5-6).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a

discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Turning to the parties' arguments, the ALJ could not have erred by not relying on SSR 24-1(6) as that SSR has an effective date of December 2, 2024, almost a month *after* the ALJ issued her November 7, 2024 decision. 2024 WL 4870750. Thus, the undersigned turns to the parties' arguments concerning *Drummond* and *Earley*.

In *Drummond*, the Sixth Circuit concluded that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. However, the Sixth Circuit subsequently rejected the idea that an ALJ is always bound by a previous disability determination and recognized that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Earley*, 893 F.3d at 932. However, the *Earley* court noted that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Here, in discussing Claimant's severe impairments, the ALJ noted that because there was a prior unfavorable decision, she "must apply the principles set forth in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) (see also Social Security Ruling 98-4(6))." (ECF No. 7, PageID #: 46). The ALJ provided the following explanation and analysis regarding *Drummond*:

> The Drummond v. Commissioner of Social Security and Acquiescence Ruling 98-4(6) holds that, absent evidence of improvement or deterioration in a claimant's condition, a subsequent Administrative Law Judge is bound by the residual functional capacity findings of a previous Administrative Law Judge (ALJ). The undersigned has complied with Drummond and the other cited precedence and finds that as to primary issue of migraines, there is little change from the prior ALJ decision regarding this impairment. As to migraines, while the claimant has had quite a few treatments for migraines, such treatments have been ongoing since she was a teenager and recent neurology records do note some improvement to frequency/severity of migraines, as also support by normal neurology exams (Exhibits B-4F; B-6F; B-8F; B-12F; B-13F; B-17F; B-25F; B-26F; B-27F). However, the undersigned further notes that the claimant has a new impairment of the cervical spine, which impacts her residual functional capacity reducing her ability to stand and/or walk to four hours in an eight-hour workday. Otherwise, there is no substantive evidence showing that the claimant's condition suddenly deteriorated significantly the day after the prior unfavorable March 24, 2021, ALJ decision, and as to mental health issues, overall current records reflect symptoms and functioning improved/stable and managed with prescribed use of medications, and as such the undersigned has essentially adopted the previous physical and mental status residual functional capacity adjusting it for greater policy compliance in the use of terns based upon updated guidance since 2021.

(*Id.* at PageID #: 46, 48).[1] The ALJ here incorrectly cited and stated she relied on the standard set forth in *Drummond*. However, "a reviewing court should look beyond any superficial reference to *Drummond* to determine whether the subject claimant in fact received a fair administrative hearing in adherence to the *Earley* opinion." *Solomon v. Comm'r of Soc. Sec.*, No. 5:25-CV-01977, 2026 WL 1336228, at *7 (N.D. Ohio May 13, 2026) (collecting cases). Consistent with *Earley*, the ALJ's discussion makes clear that she considered the new evidence concerning Claimant's

[1] Page 2 of the ALJ decision is incorrectly filed between pages 4 and 5 in the Court transcript.

migraines and found that it did not support any significant change in Claimant's abilities such that the prior limitations remained appropriate. (ECF No. 7, PageID #: 48).

Substantial evidence supports the ALJ's conclusion that Claimant's migraines had not worsened since the previous decision and that no additional limitations were warranted. The ALJ provided the following explanation for the RFC she adopted:

> As to the claimant's longstanding issues with headaches/migraines dating to her teenage years and predating the prior March 2021 unfavorable ALJ decision, the claimant has tried numerous medications including Neurontin, antidepressant/antipsychotics, Emgality, Aimovig, Botox and has had some improvement (Exhibit B-25F). Her testimony also indicates that her headaches are not worse than they were before, but they are constant. However, her treatment has remained stable and while she was referred for additional Headache Reboot, she did not undergo due to financial and/or assurance [sic] issues. . While the claimant noted some light and sound sensitivity, such issues had been ongoing for many years and as noted earlier, treatment and clinical/objective findings have remained stable. …
>
> Given the above, overall discussion of evidence for treatment, improvement/stability with treatment as reasonably supported by and consistent with clinical exam findings and reports of daily activities and medical statements, the undersigned finds the claimant limited light exertion work, as reduced by standing and/or walking of four hours total in an eight-hour workday, and as further reduced by the following. The claimant can frequently handle/finger bilaterally, she can frequently balance as defined in the SCO of the DOT, she can occasionally stoop, kneel, crouch, crawl and she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant also needs to avoid concentrated exposure to extreme cold, extreme heat, weather as defined int he [sic] SCO of the DOT, wetness, and to vibration and to avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. In accommodation of migraines, the claimant is further limited to working in an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO). Mentally the claimant can understand, remember, and carry out simple tasks and can deal with occasional changes in a routine work setting, but she cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas but can perform end of day quotas. The claimant can also have occasional interactions with supervisors and coworkers, but she cannot engage in tandem tasks, or have interaction with the public.

(*Id.* at PageID #: 60-61). The ALJ's decision cites records where Claimant reported overall improvement in her migraines. (*See id.* at PageID #: 482, 1252, 1360, 1622, 1630-31). Critically, as the Commissioner argues, Claimant herself testified at the hearing that her migraines "stayed the same" since the prior ALJ decision. (*Id.* at PageID #: 79). While the record contains some evidence that Claimant's symptoms had worsened and that Botox injections were not helpful (*see, e.g., id.* at PageID #: 1504), because substantial evidence supports the ALJ's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

Overall, while the ALJ incorrectly cited *Drummond*, she complied with the *Earley* decision, and substantial evidence supports the ALJ's decision. Accordingly, the decision should be affirmed.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Colich's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: November 4, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).